BRANTLEY, J.,
for the court.
¶ 1. Bennie C. Satcher was convicted by the Circuit Court of Jones County of aggravated assault. Aggrieved, Satcher appeals, arguing that the trial judge erred in making prejudicial comments upon certain evidence in the presence of the jury, in denying several jury instructions and in denying his motion for a directed verdict and request for peremptory instruction. Additionally, Satcher argues that the effect of the above cumulative errors denied him a fair trial. Finding no error, we affirm.
FACTS
¶ 2. On May 3, 1997, Alfonda Smith was driving to Laurel and had stopped at a gas station. While at the station, he saw Bennie Satcher driving a car that Smith had obtained for his former girlfriend and mother of his child to drive for the purpose of caring for their child who suffered from sickle cell anemia. Smith followed Satcher *597 and flashed his lights at him in order to make Satcher stop so that Smith could ask him to have the mother contact him and to find out why he was driving the car. Satcher stopped the car and they talked. Smith then proceeded to walk back to his car when he heard a shot that had hit the windshield of his car. A second shot hit his right leg, but he continued to walk back towards his car. However, a third shot hit his left leg, at which time he fell to the ground. Smith was taken to a local hospital for treatment of his wounds.
¶ 3. Satcher turned himself in to the police. During the trial Satcher testified to a different version of events than the above events described by Smith. Satcher testified that after he stopped his automobile, Smith ran towards Satcher’s car with a gun in his hand shouting obscenities and stating that he was going to kill Satcher. Satcher tried to leave, but his car would not move. He then grabbed a rifle from the back seat of the his car and began firing it at Smith. Satcher stated that he was in fear of his life.
¶4. Smith and Satcher both testified that Smith had stopped him on a previous occasion when Satcher was driving the same car at which time Smith had asked Satcher not to drive the car anymore. A coworker of Satcher’s testified that he had seen Smith follow Satcher on several occasions.
¶ 5. John Musgrove, who witnessed the shooting, testified that Smith was walking towards his car with his back to Satcher when Musgrove heard a shot and saw Smith fall to the ground. Musgrove saw Satcher with a gun, but did not see Smith with a gun. Additionally, no gun was found at the scene or in Smith’s car when it was searched and inventoried. However, Satcher turned over the weapon used to shoot Smith when Satcher turned himself into the police. The jury found Satcher guilty of aggravated assault. Aggrieved, Satcher perfected this appeal.
DISCUSSION OF THE ISSUES
I. WHETHER THE TRIAL JUDGE ERRED BY MAKING PREJUDICIAL COMMENTS ABOUT EVIDENCE PRESENTED DURING TRIAL IN THE PRESENCE OF THE JURY.
¶ 6. Satcher argues that the trial judge erred in making comments as to the relevancy and materiality of evidence. During cross-examination of Smith, defense counsel continuously questioned him about the information in the statement given to police by Smith and Smith’s direct testimony as to the events that occurred the day he was shot. Defense counsel continued to ask Smith to point out where in his statement he had told the police some of the information he testified to during direct examination.
¶ 7. However, the judge finally asked if the testimony was in the statement and when he found that it was not, he asked counsel to move along in his questioning. At that time the prosecution asked to have the statement entered into evidence. Although the judge allowed the statement to be marked for identification purposes only, he also stated that anything that was not part of the statement was immaterial and irrelevant. After defense counsel tried to explain why he believed it to be relevant, counsel completed his cross-examination. Then the State examined the witness on redirect and afterwards the witness was excused and the prosecution rested its case. In chambers, defense counsel then asked for a curative statement to explain the judge’s comments about the statement, which the judge denied.
¶ 8. In ruling on the admissibility of evidence, a trial judge has to determine whether the proffered evidence is relevant *598 and material to the issues being tried. He should do so, however, without appearing to favor one side or the other.
¶ 9. Here, the defense attorney was attempting to cross-examine the prosecuting witness about what he perceived as discrepancies between the witness’s pretrial, recorded statement to the police and the witness’s testimony on direct examination during the trial. The trial judge grew tired of what he perceived as needless and repetitive questions by defense counsel over these discrepancies. As a result of these diverse perceptions, the following exchange occurred:
THE COURT: Is that in there, Mr. Buckley?
MR. BUCKLEY: Huh?
THE COURT: Is that in the statement?
MR. BUCKLEY: Not in the one that’s provided to me.
THE COURT: Then let’s go on. If it’s not in the statement, let’s go on.
MR. STRICKLIN: Your Honor, we’d like to offer into evidence this entire statement. It’s been picked apart and out of context so much, I think the whole thing ought to be made—
THE COURT: I don’t know about that. I’m just tired of asking questions about things that’s not in the statement. If it’s not in the statement and it’s not part of the statement, it’s immaterial. It’s irrelevant.
MR. BUCKLEY: No, sir, Your Honor, it’s not irrelevant. It’s not immaterial. Because I have the right to cross-examine this witness about what he said on the witness stand on direct examination. And that’s what I’m doing.
¶ 10. The trial judge’s comment was an incorrect statement of the law and should not have been made in the presence of the jury. We cannot agree that information, omitted from a pretrial statement, is necessarily irrelevant to what a witness testifies to at trial. Its relevance depends on the nature of the omitted information and the circumstances giving rise to its omission.
¶ 11. The point of disagreement between the prosecuting witness and defense counsel centered around the witness’s trial testimony on direct examination that he had followed Satcher for a short distance, blinked his lights to stop Satcher, and that Satcher shot him after they had talked, while the witness was walking back to the witness’s car. This information was not detailed in the pretrial statement given by the prosecuting witness. However, our review of the witness’s statement reveals no material variance between the witness’s trial testimony and his pretrial statement. During the interview with the police department, the witness stated that he stopped Satcher, that during this encounter Satcher was laughing and talking and that after their discussion, Satcher pulled off. What the witness said at trial, that was different from what he said in the statement, was that after Satcher pulled off, the witness started walking back to the witness’s car and was suddenly shot by Satcher. During the pretrial interview, the witness was never asked precisely at what point he was shot.
¶ 12. While it would have been better for the trial judge to have withheld his comment, we do not find that the comment, and the refusal of the trial judge to give a curative instruction, constitute reversible error. Despite the conflicting factual versions given by Satcher and the prosecuting witness as to what happened at the time of the shooting, there was ample evidence of Satcher’s guilt. Moreover, in light of the witness’s trial testimony that he chased Satcher down and stopped him, we cannot see how Satcher was prejudiced by being precluded from *599 cross-examining the witness on the witness’s failure to include this information in his pretrial statement. The assertion that prejudice occurred would be more plausible had the witness included the event in the pretrial statement but denied at trial that the event happened. This issue lacks merit.
II. WHETHER THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON SELF DEFENSE.
¶ 13. Satcher argues that the trial court erred in denying his instructions on self-defense. However, the trial court did grant the defense a general self-defense instruction which stated that if the jury found that Satcher shot Smith while Satcher was in imminent danger of serious bodily harm or death at the hands of Smith and that he did so in direct response to such imminent danger then the jury must find him not guilty. However, Satcher also had three other proposed instructions dealing with the law on self-defense.
¶ 14. We begin our analysis with the well settled law that an accused has an “absolute right ... to have every lawful defense he asserts, even though based upon meager evidence and highly unlikely, to be submitted as a factual issue to be determined by the jury under proper instruction of the court.” McMillan v. City of Jackson, 701 So.2d 1105(¶ 13) (Miss.1997) (quoting O’Bryant v. State, 530 So.2d 129, 133 (Miss.1988)). However, we do not review the jury instructions in a vacuum. “The instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” Hickombottom v. State, 409 So.2d 1337, 1339 (Miss.1982) (citations omitted).
¶ 15. The right to “stand your ground” instruction requested by the defense was refused. The Mississippi Supreme Court has held that a person is entitled to “stand his ground and resist force by force,” but the person must “tak[e] care that his resistance be not disproportionate to the attack.” Long v. State, 52 Miss. 23, 34 (1876). However, there must still be evidence to support this instruction. Skinner v. State, 751 So.2d 1060, 1074 (¶ 49) (Miss.Ct.App.1999). In Skinner, the Court found that the evidence did not support the instruction because Skinner fired nine times at the victim who was behind a closed door. Id. Even though Skinner and a witness testified that the victim had a knife, Skinner’s actions were “disproportionate to the attack” and did not warrant an instruction on the right to stand his ground and not retreat. Id.
¶ 16. Here, the evidence also fails to support such an instruction. Although Satcher testified that Smith had run up to Satcher’s car threatening to kill him with a gun, the witness’s testimony contradicted Satcher’s version. The witness, Musgrove, testified that he saw Smith walking back to his own car when Satcher shot Smith in the back of the legs. In addition, no weapon was seen on Smith’s person, in his car or at the scene of the shooting. From the evidence presented, even if Smith was the initial aggressor, Smith had walked away and the initial confrontation was over when Satcher fired a weapon at Smith. Satcher’s actions were disproportionate to Smith’s, and Satcher had become the aggressor. Therefore, Satcher was not entitled to an instruction on the right to stand his ground and not retreat.
¶ 17. Satcher also claims that the trial court erred in refusing to grant an instruction which instructed the jury on the prosecution’s burden to disprove a claim of self-defense. Although, the instruction was a correct statement of law, the Mississippi Supreme Court has recent *600 ly held that as long as the jury is adequately instructed on self-defense and on the prosecution’s burden to prove the elements of the crime charged, then no other instructions are required because the jury has been instructed on self-defense and that if the State has failed to prove any elements of the crime then they must acquit. Williams v. State, 803 So.2d 1159, 1162 (¶ 11) (Miss.2001) Here, the jury was given a general self-defense instruction and instructed that if they found Satcher acted in self-defense then they must acquit. In addition, the jury was instructed that the prosecution has the burden to prove each element of aggravated assault. Therefore, the trial court did not err in denying this instruction.
¶ 18. A third self-defense instruction which was basically the same as the instruction granted was also denied. The court is not required to grant instructions that are redundant to others granted. Laney v. State, 486 So .2d 1242, 1246 (Miss.1986). Accordingly, the trial court did not err in denying the third instruction.
III. WHETHER THE TRIAL COURT ERRED IN DENYING THE MOTION FOR A DIRECTED VERDICT.
¶ 19. Satcher argues that the trial court erred in failing to grant his motion for a directed verdict. He also claims that the evidence was insufficient to support the verdict. However, the State argues that the weight and sufficiency of the evidence did support the guilty verdict.
¶ 20. The standard of review for a denial of a directed verdict and peremptory instruction is well settled. On appeal, the court must accept as true all evidence which supports the verdict in addition to viewing the evidence in the light most favorable to the State. Coleman v. State, 697 So.2d 777, 787 (Miss.1997). This Court will reverse only where reasonable and fair-minded jurors could only find the accused not guilty. Wetz v. State, 503 So.2d 803, 808 (Miss.1987). In addition, it is the jury’s duty to determine the weight and credibility of the evidence. Gleeton v. State, 716 So.2d 1083, 1087 (¶ 14) (Miss.1998).
¶ 21. Here, the evidence supports the verdict. Smith testified that he was walking away from Satcher’s car, returning to his car when he was shot. Satcher contends that Smith’s story was implausible. However, Musgrove testified that he saw Smith walking away from Satcher’s car when Smith fell to the ground. In addition, Satcher was seen with a gun, but Smith was not seen with a weapon, nor was one found at the scene or in his car. Additionally, Smith was shot in the back of the legs indicating that, just as he and Musgrove stated, he was walking away from Satcher. The trial court did not err in failing to grant a directed verdict nor in denying the request for a peremptory instruction because when reviewing the evidence in a light most favorable to the verdict, the evidence was sufficient to support the verdict.
IV. WHETHER THE CUMULATIVE EFFECT OF THE ERRORS COMMITTED AT TRIAL ARE CAUSE FOR REVERSAL.
¶ 22. Satcher claims that the cumulative effect of the errors asserted above constitute reversible error because he was denied a fair trial. The Mississippi Supreme Court has held that a conviction may be reversed “based upon the cumulative effect of errors that independently would not require reversal.” Genry v. State, 735 So.2d 186(¶ 73) (Miss.1999); see also Jenkins v. State, 607 So.2d 1171, 1183-84 (Miss.1992); Hansen v. State, 592 So.2d 114, 153 (Miss.1991). However, the Court has also held that where “there was no *601 reversible error in any part, so there is no reversible error to the whole.” McFee v. State, 511 So.2d 130, 136 (Miss.1987). This Court has reviewed each of Satcher’s assignments of error and has found that each lacked merit. Accordingly, Satcher was not denied a fair trial.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF THE SECOND JUDICIAL DISTRICT OF JONES COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS WITH TEN YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, TEN YEARS SUSPENDED AND FIVE YEARS OF SUPERVISED PROBATION AND TO PAY RESTITUTION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.